IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DELORES TAYLOR and
LATISHA WILLIAMS,

   Plaintiffs,

     v.

THE HOUSING AUTHORITY OF
THE CITY OF ATLANTA, GEORGIA
and RENEE GLOVER, in her official
capacity as CEO of the Housing
Authority of the City of Atlanta,
Georgia,

   Defendants.

CIVIL ACTION
NO. 1:05-CV-2335-JTC

**O R D E R**

Pending before the Court is Plaintiffs' Motion for Preliminary Injunction [# 9]. After hearing oral argument on October 14, 2005 and reviewing the parties' briefs, the Court **DENIES** Plaintiffs' motion.

**I.**    **Background**

Plaintiffs Delores Taylor and Latishia[1] Williams were residents of Landrum Arms, which was a subsidized apartment complex under the federal low-income housing program administered by the U.S. Department of Housing and Urban Development ("HUD"). Recently, Landrum Arms failed a

---

[1] Ms. Williams' name was incorrectly entered as Latisha Williams when this case was docketed. Her legal name is Latishia Williams.

HUD health and safety inspection and subsequently lost its subsidy contract (the "enforcement action"). In such situations, residents are provided with tenant-based vouchers under the Housing Choice Voucher Program, also known as the Section 8 program, which enable them to move to any location in the community which accepts Section 8 assistance.

The Section 8 Program is generally administered by state or local governmental entities called public housing agencies ("PHAs"). In this case, HUD charged the Atlanta Housing Authority ("AHA") with the task of providing vouchers to displaced Landrum Arms residents. The AHA consequently screened all Landrum Arms residents who sought vouchers, and although it provided vouchers to most tenants, it refused to give vouchers to Plaintiffs on the basis of their criminal records.

The record is unclear with respect to the particulars of Plaintiffs' offenses. However, it does indicate the following criminal activity. Plaintiff Delores Taylor was convicted in 1987 of carrying a concealed weapon and was sentenced to twelve months probation, which she successfully completed. In 1993 she was convicted of cocaine possession, for which she served four years in prison. Plaintiff Latishia Williams's record is more substantial. At an unknown time, Williams was charged with discharging a firearm, but the charge was dismissed. In 1990 she was charged with aggravated assault, the

result of which is not in the record.  In 1991 she was charged with aggravated assault, but the charges were reduced to an affray.  In 1998 Williams was charged and plead guilty to assaulting a police officer.  Again in 1999, it appears that Williams was charged with resisting arrest and assaulting a police officer; however, the record indicates that she plead guilty to misdemeanor battery for that incident.

As noted above, Plaintiffs were denied vouchers by the AHA based on this criminal activity.  They pursued administrative appeals within the agency, through which they were able to present evidence attempting explain away or mitigate their conduct, but were unsuccessful.  They now bring this action alleging that they are entitled to the tenant-based vouchers, or in the alternative, even if they are not entitled to them, that they were impermissibly screened by the AHA and should have received them notwithstanding their prior criminal activities.

## II.     Preliminary Injunction Standard

In order to obtain a preliminary injunction, Plaintiffs must show that: (1) there is a substantial likelihood of success on the merits; (2) they will suffer irreparable harm unless the injunction issues; (3) the threatened injury outweighs any harm that granting injunctive relief would cause Defendants; and (4) granting injunctive relief would not be adverse to the public interest.

McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998).  A preliminary injunction is an "extraordinary and drastic remedy" and should not to be granted unless Plaintiffs "clearly establish[] the 'burden of persuasion'" as to these four requirements.  Id. (citations omitted).  As discussed below, because Plaintiffs have failed to show a likelihood of success on the merits, it is unnecessary to discuss the remaining three requirements.

### III.   Analysis

42 U.S.C. § 1437f provides the framework for federally subsidized low-income housing.  Section 1437f(t), in particular, deals with the present circumstances, where a subsidy contract has ended or been terminated.  The HUD enforcement action referenced above constitutes an "eligibility event" under this section:

> For purposes of this subsection, the term "eligibility event" means, with respect to a multifamily housing project, . . . the termination or expiration of the contract for rental assistance under this section for such housing project (including any such termination or expiration during fiscal years after fiscal year 1994 prior to October 27, 2000), or the transaction under which the project is preserved as affordable housing, that, under . . . section 524(d) of the Multifamily Assisted Housing Reform and Affordability Act of 1997 (42 U.S.C. 1437f note), . . . results in tenants in such housing project being eligible for enhanced voucher assistance under this subsection.

Id. § 1437f(t)(2) (emphasis added).  The attributes of an "enhanced" tenant-based voucher, as opposed to an ordinary tenant-based voucher, is that a

tenant with the former may elect to remain at the premises upon termination of the project-based assistance contract, even if the rent is increased, because the enhanced voucher carries with it a higher permissible subsidy.  Id. § 1437f(t)(1)(B).[2]

Section 1437f(t)(2) references § 524(d) of the Multifamily Assisted Housing Reform and Affordability Act of 1997 ("MAHRA").  That section provides:

> In the case of a contract for project-based assistance under section 8 for a covered project that is not renewed under subsection (a) or (b) of this section (or any other authority), to the extent that amounts for assistance under this subsection are provided in advance in appropriation Acts, upon the date of the expiration of such contract the Secretary shall make enhanced voucher assistance . . . available on behalf of each low-income family who, upon the date of such expiration, is residing in an assisted dwelling unit in the covered project.

MAHRA § 524(d)(1), Pub. L. No. 105-65, 111 Stat. 1344 (codified at 42 U.S.C. § 1437f) (emphasis added).  Finally, 24 C.F.R. § 982.203(a)(1) provides: "[I]f

---

[2] The distinction is of little import in this case.  Although Landrum Arms residents are technically eligible for enhanced vouchers, such vouchers lose their enhanced status and become ordinary vouchers under § 1437f(o) if the tenant moves from the property, see § 1437f(t)(1)(C)(i), which Plaintiffs have done in this case.  This situation is common when a subsidy contract is terminated for health and safety violations: "Eligible families are usually assisted with regular vouchers in these circumstances because families must move to receive housing voucher assistance." U.S. Dep't of Hous. & Urban Dev., Notice PIH 2001-41 (HA), Section 8 Tenant-Based Assistance (Enhanced and Regular Housing Choice Vouchers) for Housing Conversion Actions – Policy and Processing Guidance, at 4 (1996) [hereinafter PIH 2001-41].

HUD awards a PHA program funding that is targeted for families living in specified units . . . [t]he PHA <u>must</u> use the assistance for the families living in these units." Id. (emphasis added).

Plaintiffs first argue that the language of the statutes and regulation creates an automatic entitlement to the vouchers, regardless of their criminal history. In the alternative, they argue that even if the AHA is permitted to screen individuals prior to entry in the program, they impermissibly denied Plaintiffs vouchers on the basis of such screening.

### A.     Eligibility v. Entitlement

Plaintiffs argue that the eligibility language of § 1437f(t)(2), coupled with the "shall" language of § 524(d)(1) and the "must" language of 24 C.F.R. § 982.203(a)(1), shows that Congress intended to create an automatic entitlement to the Section 8 vouchers upon the termination of a project-based contract. As discussed below, the Court disagrees.

The first step in discerning Congressional intent is to look to the statute itself. <u>See</u> <u>Harry v. Marchant</u>, 291 F.3d 767, 770 (11th Cir. 2002) ("[W]e begin by examining the text of the statute to determine whether its meaning is clear."). The eligible/shall/must language to which Plaintiffs point is not so clear as they would have the Court believe. Congress could have drafted § 1437f(t) to make displaced tenants "entitled" to tenant based

6

vouchers upon the occurrence of certain events, as opposed to merely "eligible," as they are now.  Moreover, Congress could have defined the Secretary's obligation under § 524(d) as "shall provide enhanced voucher assistance to each family displaced" instead of "shall make enhanced voucher assistance . . . available on behalf of each low-income family [displaced]," as it reads now.

At best, Congressional intent, as read from the language of the statutes, is ambiguous with regard to whether an entitlement is created after a HUD enforcement action.[3]  However, any ambiguity in the above-referenced statutory language is remedied by HUD's interpretation of the laws in PIH 2001-41.[4]

Pursuant to Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S. Ct. 2778, 2781 (1984), "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the

---

[3] In addition, although the agency-promulgated "must" language of 24 C.F.R. § 982.203 may seem unambiguous at first glance, the agency's reasonable interpretation of the regulation, see PIH 2001-41, at 9-10 (specifically referencing unused vouchers resulting from vacant units or ineligible families), belies Plaintiffs' alternative construction of the regulation as creating an entitlement.

[4] On its face, this publication states that it was "Issued: November 14, 2001" and "Expires: November 30, 2002."  All such notices issued by HUD have similar issuance and expiration dates.  However, it seems clear that an agency's interpretation of the law does not cease to exist because the notice "expires."  Moreover, the Court has not found, nor have the parties cited, any HUD document which indicates a contrary interpretation of the laws at issue in this case.

agency, must give effect to the unambiguously expressed intent of Congress." On the other hand, where a statute is silent or ambiguous on a particular issue, the Court must determine whether the agency's interpretation "is based on a permissible construction of the statute." Id. at 843, 104 S. Ct. at 2782. The interpretation of the agency need not be the only interpretation possible; as long as it is reasonable, the Court must defer to the agency's judgment. See id. at 844 ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency").

HUD's interpretation of these laws is a reasonable one, and as evidenced by PIH 2001-41, clearly contemplates the screening of individuals by the local governmental entity administering the program. The notice provides:

> By agreeing to administer the special admission tenant-based assistance, the PHA is not relinquishing its authority to screen potentially eligible families or deny assistance for any grounds allowed by [24 C.F.R.] § 982.552 and § 982.553. The screening of families and decisions to deny admission to the program must be the same as the PHA policy for screening regular admissions of families from the PHA waiting list.

PIH 2001-41 at 6. As noted above, Congressional intent is unclear. Therefore, because the agency's interpretation of the statutes is reasonable, the Court cannot substitute Plaintiffs' or its own alternative interpretation,

whether or not it is reasonable, for that of the agency which is charged with administration of the low-income housing laws.  Accordingly, Plaintiffs are not likely to succeed on the merits of their claim that they are "entitled" to vouchers.

### B.     Permissible Screening

In the alternative, Plaintiffs argue that even if the AHA had authority to screen them prior to entry into the Section 8 program, they should not have been denied vouchers under the AHA's Administrative Plan Governing the Housing Choice Voucher Program ("Administrative Plan").  They argue that "[w]hen the five paragraphs of the Administrative plan are read together with the federal regulations, statutes, and due process rights, the only basis for terminating or denying a voucher for criminal activity is if such activity could indicate a reasonable threat to the health, safety, or welfare of others."

The Code of Federal Regulations provides that:

> The PHA <u>may</u> prohibit admission of a household if the PHA determines that any household member is currently engaged in, or has engaged in <u>during a reasonable time before the admission</u>: (1) Drug-related criminal activity; (2) Violent criminal activity; (3) Other criminal activity which may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents or persons residing in the immediate vicinity . . . .

24 C.F.R. § 982.553(a)(2)(ii) (second emphasis added).  Plaintiffs Taylor and Williams argue primarily that because their offenses are more than twelve and six years old, respectively, they have not engaged in prohibited conduct within a reasonable time before admission, and thus may not be denied vouchers on this basis.  They also aver that they do not present a reasonable threat to the health, safety, or welfare of others.

However, the Code of Federal Regulations also provides that "[t]he PHA may at any time deny program assistance for an applicant in accordance with the PHA policy, as stated in the PHA administrative plan, on screening of applicants for family behavior or suitability for tenancy." 24 C.F.R. § 982.552(e); see also 24 C.F.R. § 982.307(a)(1) ("[T]he PHA may opt to screen applicants for family behavior or suitability for tenancy. The PHA must conduct any such screening of applicants in accordance with the policies stated in the PHA administrative plan.").

With respect to screening, the AHA Administrative Plan provides:

> Atlanta Housing Authority may deny admission to Applicants or terminate housing subsidy assistance of Participants if they or any family member are or have been engaged in criminal activity that could reasonably be expected to indicate a threat to the health, safety, or welfare of others.

Administrative Plan, Part XI, Art. 2, para. 1. The Administrative Plan also provides that:

> Applicants may be denied admission and Participants may be subject to termination of housing subsidy benefits if any member of the household have ever been convicted of, arrested or under an outstanding warrant for, or reasonably believed to be engaged in any Violent or Drug-Related offenses.

Administrative Plan, Part XI, Art. 2, para. 3 (emphasis added). The provision explicitly lists "Felony Drug Charges" and "Assault and Battery" as "examples of Violent or Drug-Related Offenses." Id.

It is undisputed that Plaintiffs engaged in conduct for which the Administrative Plan allows denial of assistance.  The Court notes, however, that the above-referenced language is permissive.  Therefore, the agency necessarily exercised some level of discretion in balancing Plaintiffs' prior conduct, their explanations and mitigating evidence therefor, and the safety and welfare of the community in ultimately concluding that Plaintiffs should not receive vouchers.  The question in this case is not how the Court would balance these competing considerations, but whether the AHA's decision should stand.

Because the AHA is a state agency, the Administrative Procedure Act does not establish the applicable standard of review.  See Ritter v. Cecil County Office of Hous. and Cmty. Dev., 33 F.3d 323, 327 (4th Cir. 1994). Instead, the Court must undertake a two-step analysis for situations like this one, where a state agency is interpreting or implementing regulations under the authority of a federally created program.  First, the Court must determine whether the action of the state agency is inconsistent with the federal housing provisions.  Id. at 328.  If it is not, "the court should afford the state agency's action reasonable deference, meaning that the action should be upheld unless it is found to be arbitrary or capricious."  See Clark v. Alexander, 85 F.3d 146, 152 (4th Cir. 1996) (citing Ritter, 33 F.3d at 328).

With regard to the first step, the Court has already determined that the AHA's screening function as stated in the Administrative Plan is not inconsistent with the authority vested by federal regulations. With regard to the second step, given the evidence in the record, the Court cannot say that the AHA's decision to deny Plaintiffs assistance on the basis of their prior criminal activities was arbitrary or capricious.

The Court would like to think that HUD delegated voucher authority to the AHA for a reason–that is, because it is a local entity, it is more in tune with the needs and characteristics of the community, and is thus better able to balance the competing considerations than can a federal agency based in Washington, D.C. The AHA, after reviewing Plaintiffs' criminal backgrounds, the evidence they presented that mitigated or explained their previous conduct, and the potential harm to the community should Plaintiffs be issued vouchers, could have validly determined that giving Plaintiffs vouchers in view of these factors would be inconsistent with its obligation to provide safe and affordable housing for seniors, families, and disabled persons, as well as its obligation not to subsidize the introduction of persons into the community who might present a reasonable threat to the health, safety, or welfare of others. Accordingly, the AHA's decision to deny Section 8 vouchers was not arbitrary or capricious, and will not be overturned by this Court.

13

## IV.  Conclusion

Plaintiffs are unlikely to succeed on the merits of their claims that (i) they are entitled to housing vouchers, or (ii) even if the AHA is permitted to screen applicants prior to entry into the program, that they should have been given said vouchers.  As a result, Plaintiffs' motion for preliminary injunction [# 9] is **DENIED**.

**SO ORDERED**, this  25th   day of October, 2005.

 /s/Jack Camp
JACK T. CAMP
UNITED STATES DISTRICT JUDGE